## P. BUCK, Agent, vs. PAYNE & RAINES.

1. MORTGAGE FOR SUPPLIES: *Lien for labor. Act of April 5, 1872.*
   The act of April 5, 1872, gives a "first lien in law" on the crop, to secure the wages of the laborer, and operates against all persons claiming an interest in the products of the labor. The employer cannot create another lien that is paramount. The lien is implied by law. It exists *in pais*. It requires no writing and rests upon no record to uphold it. One who purchases from a laborer is protected to the same extent that the laborer was—becomes his assignee, takes his rights, and stands in his place.
   Where a farmer executes a mortgage on his crop for supplies to enable him to make the crop, and hires laborers to assist in making the crop, the laborer has a paramount lien, though his contract be verbal, and the mortgage be duly recorded.

2. SAME: SAME: *Waiver of lien.*
   The lien of a laborer being verbal, he may waive it by parol in favor of the mortgagee of his employer, and thus the mortgage acquires a paramount lien. The laborer may rely upon the promise of his employer for his pay, and waive the security which the law provides, and whether he has done so or not is a question of fact for the jury.

3. SAME: *Purchaser for value. Notice of waiver.*
   Where a laborer has surrendered and waived his lien, and then sells the crop to a third party, such third party takes only such right in the property as the laborer had after his waiver, and the vendee of the laborer cannot protect himself by proof that he did not know of such waiver. A party under duty to make inquiry, must use all reasonable diligence that directs him to the primary sources of information.

4. SAME: *Mortgage. Breach of conditions. Suit. When brought. Code of 1871, ¿ 2295.*
   The mortgagor is the owner of the property, as against all the world, until a foreclosure of the mortgage, and owner also against the mortgagee *until after breach of the condition,* and at any time before forfeiture the owner of the legal estate is capable of transmitting it by descent, devise, or deed. The mortgage, being but a security for the debt, would pass to the assignee, as an incident.

5. SAME: *Replevin. Right to immediate possession.*
A party who sues in replevin or detinue must have the right of immediate possession, either by virtue of a general property, as owner, or a special property, as bailee, at the time he sues.

ERROR to the Circuit Court of *DeSoto* County.

Hon. E. S. FISHER, Judge.

This case was before this court at a former term, and is. reported in 50 Miss., 648. It was then reversed because the record did not show that the mortgage executed by Arlow Minice to Payne & Raines, by virtue of which they claim the cotton, had been recorded. On the second trial it was submitted, on the record of the former trial and the testimony as embodied in the bill of exceptions, coupled with the agreement that in fact the said mortgage had been recorded immediately after its execution. Upon this agreement it was decided in favor of the defendants in error (plaintiffs below), who had judgment for the value of the cotton. As to the facts in the case, they are sufficiently detailed in the opinion of the court in this case, as also in the case as formerly reported in 50· Miss., 648.

Errors are assigned as follows :.

1. In giving instructions asked by plaintiffs.

2. In refusing instructions asked by defendant.

3. In refusing motion for a new trial.

*Harris & George* and *J. B. Harris*, for plaintiff in error :

. The question, as the case is now presented, is, can the purchaser from the laborer acquire a good title as against the mortgagee. Upon the first trial the court decided that the act of 1872 gave to the laborer a lien for his wages, paramount to all others after the passage of the act, whether the mortgage was executed before the laborer was employed or not. ·The· mortgage in this case was executed in February, 1873, after the passage of the act. The laborer was employed April 3, 1873, after the execution of the mortgage. His lien for labor was paramount and superior, but the facts show that there was an agreement *in pais* to waive the lien in favor of the.

mortgagee, and the question is whether notice of the mortgage alone, without notice of the waiver, was sufficient notice to defeat a *bona fide* purchaser from the laborer. If he had full notice of the mortgage, that was not notice of the waiver. The mortgage shows that it was executed after the passage of the act, and that gave the laborer the prior lien, and he must conclude that it is safe to purchase. Certainly by a mere verbal agreement between the laborer and the mortgagee, of which the purchaser had no notice, his title cannot be defeated. The recognition of the views herein expressed will be found in the opinion of the court in 50 Miss., 654.

The knowledge of the existence of the mortgage could not affect the rights of the laborer, nor, consequently, any one who succeeded to his rights. It is not pretended that this verbal agreement was known to the purchaser from Minice, the laborer. The registry was notice of the fact of a lien inferior to that of the laborer, who had the cotton in possession. The registry was notice of the contents of a deed by law postponed to the laborer's lien—a lien subordinate to that of the laborer.

The mortgagees brought suit *before a breach* of the condition, when they had no legal title or legal ownership, according to the established law of the day and the express provisions of the statue. Code, 1871, § 2295. As to third parties, the mortgagee out of possession is never the owner of the legal title, and has only an equity.

*White & Chalmers*, for defendants in error:

The mortgage was executed February 14, 1873, and duly recorded. Several months afterward Arlow Minice employed Thomas Minice. He admits he had full knowledge of the mortgage. The mortgage was executed by Arlow Minice, but the supplies were actually delivered to his son Thomas, the laborer, and he agreed to deliver the cotton according to his father's agreement. J. A. Payne so states, and Thomas Minice virtually admits it. In the summer the crop, or the land on which it was grown, was divided between Thomas and Arlow Minice,

without the knowledge of Payne & Raines. When Thomas gathered his part of the crop he delivered one bale to Tait for rent, and sold the bale in controversy to Buck's clerk, who had notice of the mortgage. Payne & Raines at once sued in replevin and recovered the cotton.

The verdict was right. Twelve honest jurors could render no other verdict.

It was a clear attempt to defraud the mortgagees. In view of these facts we say the verdict is right, irrespective of the legal question as to whether the lien of the mortgagee or of the laborer on the cotton crop was superior. The court below expressly refused to decide the priority of these rights, because not properly presented. The laborer's lien is secured by act of 1872, p. 131. The mode of asserting it is pointed out. It is an indispensable requirement that "the names of all persons having or claiming an interest in the crop" should be disclosed, and all such persons be made parties to the proceeding. Even if the laborer's lien was superior to that of the mortgagee (which we expressly deny), it is evident that the mortgagor and the laborer cannot privately agree that the laborer shall receive a certain part of the crop, and thereby, without the knowledge or consent of the mortgagee, invest the laborer with a perfect title to the portion of the crop assigned him, and as to such portion defeat the mortgage. If so, they can assign the whole. To invest the laborer with a legal title to any part of the crop the agreement must be participated in by all parties in interest. To hold that the two parties could create the lien by agreement would be monstrous.

The crop grew and came into existence the property of Arlow Minice, charged by the mortgage with a lien in favor of the merchants, and charged by the statute with a lien in favor of the laborer. Of these, that of the laborer is superior. But he had expressly agreed, for value, that his should be subordinate to that of the merchant, and had thereby estopped himself from claiming against the latter. The merchant's

lien being of record, can the laborer now sell his lien so as to pass to the purchaser a right to assert that equitable right which he himself could not set up?

It will not do to say that the purchaser had no notice of the waiver of priority of lien by the laborer. He is only the purchaser of a lien—an equity. The purchaser of an equity can never claim to be a *bona fide* purchaser without notice. He is bound by all other equities of other parties. That the purchaser of an equity is bound by all other equities is well settled. 24 Miss., 208; 42 ib., 18; 25 ib., 245; 43 ib., 260.

SIMRALL, C. J., delivered the opinion of the court.

This case was once before in this court, and turned upon the question whether the mortgage executed by Arlow Minice to Payne & Raines was superior to the laborer's lien of Thomas Minice. The circuit court had instructed the jury that the mortgage, having been executed *14th February, 1873*, was superior to the lien of the laborer, which resulted from the contract of employment entered into by the mortgagor with Thomas Minice the *6th April, 1873*. It was held by this court that a mortgage on the crop, executed after the passage of the act of the 5th of April, 1872, was subordinate to the right of the mortgagor to employ laborers, and thereby by operation of law create a lien in their behalf, although such employment might be subsequent to the date of the mortgage.

When Payne & Raines took the mortgage from Arlow Minice it was subject to his right to employ laborers, and subject to the first lien, which the act of 1872 created in their behalf.

The case must be remanded for that error. It was also to be considered on the second trial, on the question whether Buck was a *bona fide* purchaser of the cotton. Testimony went to the point that Thomas Minice had waived to the mortgagees his rights, and that Buck did not have notice of the mortgage. See report of case, Buck *v.* Payne & Co., 50 Miss., 650.

The only additional fact introduced on the second trial was that the mortgage was recorded a day or two after its date.

The case is now before us to review the judgment in favor of Payne & Raines. The laborer's lien is implied by law. It exists altogether *in pais*, resting on no matter of record, requiring no writing to evidence or uphold it. It is purely secret and tacit.

Buck, the purchaser from Thomas Minice, the laborer, is protected to the same extent that Thomas Minice was. He becomes the assignee of Thomas' rights as respects the cotton, and stands in his place. It was incumbent on him, therefore, to make inquiries and ascertain their extent. And in this the laborer's lien is distinguishable from those which are express, manifested by writing, and registered. A recorded mortgage is notice to creditors and purchasers, from the mortgagor, of its contents, and no more. It does not, and in the nature of things cannot, impart notice of secret equities. Registration contemplates no purpose of that sort. But when a right is asserted under a tacit lien it involves a concrete of circumstances out of which it arises. If Thomas Minice were contesting with Payne & Raines about the bale of cotton, it would be competent for them to show that when his employment began, in April, 1873, he agreed to waive the lien in favor of his employer's mortgage in consideration that they would furnish him directly, as through his father, with provisions and other necessaries. A lien which the law implies for the benefit of a party may be waived or surrendered by him. It may arise out of parol contract (verbal contract). So it may be waived or surrendered in the same way. If the laborer engages to rely upon the promise of the employer to pay his wages, and not upon the lien, he is at liberty to do so. He may waive the security which the law provides, and accept the personal liability of his employer.

A purchaser of cotton or other agricultural products from a laborer acquires just such title as he has and is able to give. If he has secured it for wages the presumption of law is that his right is protected by the lien conferred by the act of 1872.

Whether it be so or not is purely a question of fact, and it is open to inquiry and proof whether he did not abandon his lien by this contract. A purchaser from him acquires no larger or better right than he had. He cannot shield himself on the plea that he was an innocent purchaser, without notice that the lien has been surrendered or abandoned. He must at his peril inform himself of the terms of the laborer's contract.

The policy of the statute is to make sure to the laborer his wages. That is accomplished by impressing on the entire agricultural crop a privilege to be paid in preference to other creditors or incumbrancers. If, as we have said, he chooses to give up this advantage, his vendee of any part of the crop cannot. protect himself by proof that he did not know of such waiver. To hold otherwise would be to affirm that, although the laborer may have worked under a written contract *expressly waiving* the lien, yet if a purchaser of cotton from the laborer did not have notice of such waiver he is not bound by it, but becomes an innocent purchaser. And, further, if the employer has mortgaged the entire crop to be produced, and filed with his mortgagees the contracts with his laborers containing such waiver, such mortgagees could not prevail against a purchaser of part of the product from a laborer unless the purchaser had notice of such waiver. On the contrary, we think that a purchaser from a laborer must inform himself of the facts, and can claim no better right or greater protection than the laborer himself.

A party under a duty to make inquiry must use reasonable diligence that directs him to the primary source of information. Now, what were they in this case. Buck is held to have notice of the contents of the mortgage. He would there have read that, for supplies advanced and to be advanced to the mortgagor, his family, and hands under his control, to enable them (us) to cultivate a plantation, " the mortgagor pledged his entire crop of cotton and corn to be raised and gathered by us the present year."

The entire supplies to be consumed by *all persons* engaged in the production of the crop were to be furnished, and the whole crop to be raised by *them* is pledged.

If he had consulted Arlow Minice, the employer, he would, in all probability, have been informed that Thomas had waived his privilege to the mortgagees. The mortgage itself embraces the whole crop, because the mortgagees were to advance to Arlow for all the laborers. The plan was this : the supplies were to be on the credit of Arlow, for all the hands. They may have been debtors to him, and therefore he pledges all the rights he had against the laborers for payment. Among these was his lien on their part of the crop for what he might advance them. To that extent the mortgage would be operative, and, after this claim was satisfied, the surplus would be at the disposal of the laborer.

It does not appear that Buck instituted any inquiry, either of the employer, or the state of accounts, or claims of the mortgagees. For his own safety, before he bought the cotton, he ought to have ascertained by inquiries, at least of the employer, and, being charged with notice of the contents of the mortgage, prudence would have suggested that he should have learned from Payne & Raines why it was that Arlow Minice assumed to mortgage the whole crop.

But there is a point not brought to the notice of the court when formerly before us, and which seems to have escaped the attention of counsel on both trials in the circuit court; that is, that a default or breach of the contract with the mortgagees did not occur until after the 1st of November, whereas this suit of replevin was brought 31st October, 1873.

The statute, Code, § 2295, in accordance with the prevailing professional and judicial opinion, declares the mortgagor the owner of the property as against all the world until a foreclosure, and owner also against the mortgagee until *after breach of the contract*.

Here the mortgagees elected to sue at law before a breach

of the condition, and before a legal right was complete in them. The utmost of their claim was an equity on the property for payment of their debt.

If they had resorted to a court of equity, and sought its aid to have preserved the property and prevented its removal or sale so that it might have been held amenable to the debt, adequate relief would have been afforded.

There was error. Judgment reversed and cause remanded.

CHALMERS, J., having been of counsel, takes no part in this decision.

SIMRALL, C. J., delivered the following opinion on application for reargument:

A serious and novel question, not heretofore agitated by counsel nor considered by the court, is presented in the petition for a reargument, viz.: whether if it has been proved that Thomas Minice waived his privilege or lien in favor of the mortgagees, the subsequent sale of the cotton to Buck or his clerk was not, under the circumstances, a conversion which authorized them to proceed at once to get possession, although there had not occurred a breach of the condition of the mortgage.

The last clause of § 2295 of the Code (reënacted from former statutes) makes the grantor or mortgagor the owner of the legal title, except as against the mortgagee and his assigns, after the breach of condition. The effect of the statute has been to " naturalize into the common law " the equitable doctrine concerning the rights of the mortgagor. That was that he is, as respects third persons, and the mortgagee also, until after forfeiture, the owner of the legal estate, capable of transmitting it by descent, devise, or deed, and that the mortgage is but the security for the debt, which passes as an incident to the assignee of the money.

The legal title may be asserted by the mortgagee, but only for the protection of his debt, and to make the security available for its payment.

The clause of the statute applies to personal as well as real estate, the mortgage operating as vesting title absolutely. After condition broken, the mortgagee may pursue his legal remedy by reducing the chattels to possession, in any appropriate action, for the purpose of converting them into money by a sale to discharge his debt, but not to hold as absolute owner. For when the possession is obtained he holds still as mortgagee, subject to the equity of redemption, until that has been cut off by a sale. Carpenter v. Bowen, 2 S. & M., 48, *et seq.;* O'Reily v. Hendricks, 2 ib., 388; Thornhill v. Gilmer, 4 ib., 153.

It is axiomatic that a party who sues in replevin must have the right of immediate possession, either in virtue of a general property as owner, or a special property as bailee, at the time he sues. This is the ordinary mortgage in use in this state, giving the right to the mortgagee to move against the property after the day appointed for performance. We are not to be understood by this observation as at all denying or putting in doubt the preventive and restraining justice which a court of chancery may exert if the property is in danger of loss by the act, procurement, or negligence of the mortgagor before forfeiture. We mean that the mortgagor cannot, because of risks or dangers of that sort, in a court of law, recover *before his right of possession,* as stipulated in the mortgage, has accrued.

In some of the states, especially the New England, the courts have adhered with more or less strictness to the earlier doctrines of the common law respecting mortgages. They regard the instrument as passing at once the legal title to the mortgagee, subject to the defeasance, as a condition subsequent, which will divest or defeat the estate on performance.

Treating the mortgagee as having the legal title, they correctly hold that a sale of the property in defiance of, and in repudiation of, the rights of the mortgagee will give an action at law. Such, on careful examination, will be found to be the

character of the cases cited in the petition of counsel.   The principle is illustrated by the case of Chadwick *v.* Lamb, 29 Barb. (N. Y.), 521.

After stating "that trover can be maintained by one who has the right to the possession *at the time* of the conversion," the court say that the plaintiff took every interest, including the right of possession, "except the equity of redemption." In that case there was a clause in the mortgage "which authorized the mortgagee to take possession and sell   *   *   * at any time he shall deem himself insecure." His right of possession was not contingent on a default made.

As observed, in those states where the title passes immediately by the mortgage an action may be maintained in trover by the mortgagee.   See Pickard *v.* Love, 3 Me., 49.

Reargument denied.