The A. & N. R. R. v. Washburn.

THE ATCHISON & NEBRASKA RAILROAD COMPANY, PLAINTIFF IN ERROR, v. HENRY WASHBURN AND G. W. LEIHY, DEFENDANTS IN ERROR.

1. **Common Carriers.** An incorporated railroad company is a common carrier as to all property within the scope of its chartered powers, and it cannot by special agreement divest itself of such character, and therefore it is liable for the negligence of its servants.

2. ———. When such company undertakes to carry live stock for hire, the fact that it does so establishes its relation as a common carrier, with the duties and obligations which grow out of it.

3. **Practice:** NEW MATTER IN DEFENSE. All new matter, constituting an entire or partial defense to a cause of action, must be concisely and distinctly set up in the answer, and is not admissible under a general denial.

4. ———: EVIDENCE. A mere difference of opinion as to the weight of evidence between a reviewing court and the court which tried the cause, is not sufficient to reverse a judgment. To do so, the preponderance of evidence must be clear, obvious, and decided, or so great as to indicate prejudice, partiality, or corruption.

5. ———: REVERSAL OF JUDGMENT. A judgment will not be reversed on the ground that the finding or verdict is contrary to the evidence, unless it manifestly is so; and the reviewing court will always hesitate to reverse when doubts as to its propriety arise out of a conflict in oral evidence.

6. ———: OATH OF REFEREE. If the contrary does not appear, it will be presumed that a referee who tried the cause was properly sworn. If a party appears before a referee and proceeds with the reference to a final conclusion of the case, he waives all right to object to the report on the ground that the referee was not sworn.

ERROR from the district court of Lancaster county.

IT was an action brought by Washburn and Leihy against The Atchison & Nebraska Railroad to recover damages for injury to certain horses and mules received from them by said railroad company as common carriers

to carry over its railroad. The railroad answered denying that it received said stock from said Washburn and Leihy, but averred that it received the same from the Atlantic and Pacific Railroad under a special written contract made by that company with said Washburn and Leihy, of which the following is a copy:

"This agreement, made this 3d day of April, A. D. 1873, between the Atlantic and Pacific Railroad Company, party of the first part, and Washburn and Leihy, parties of the second part, witnesseth:

"That the party of the first part will forward for the party of the second part the following freight, to wit:

"(3) Three cars mules—(58) Mar. L, from St. Louis stock yards to Atchison, at the rate of $40—forty dollars per car. Through to Omaha for $80, and which is a special rate made expressly in consideration of this agreement, in consideration of which, the party of the second part agrees to take care of said freight while on the trip, and load and unload the same at his or their own risk and expense, and that the party of the first part and connecting lines over which such freight may pass shall not be responsible for any loss, damage, or injury, which may happen to said freight in loading, forwarding, or unloading, by suffocation or other injury caused by overloading cars, by escapes from any cause whatever, by accident in operating the road, or delay caused by storm, fire, failure of machinery or cars, or obstruction of the track from any cause, or by fire from any cause whatever, or by any other cause except gross negligence, and that said party of the first part and such connecting lines shall be deemed merely forwarders, and not common carriers, and only liable for such loss, damage, injury, or destruction of such freight as may be caused by gross negligence and not otherwise. And said party of the second part agrees to assume all risk of damage or injury to, or escape of, the live stock

which may happen to them while in the stock yards awaiting shipment."

The cause was referred to George H. Roberts, referee, to determine all the issues between the parties. It is unnecessary to set forth the evidence in detail. There was testimony tending to show that the damage was caused by one of the cars being thrown from the track near Doniphan, Kansas, and in consequence thereof several of the animals afterwards died. The referee found for the plaintiffs below, and assessed their damages at $1900. Judgment was rendered on his report by POUND, J., and the cause was brought here by the railroad upon petition in error.

*S. B. Galey*, with whom was *R. E. Knight* and *James E. Philpott*, for plaintiff in error, cited *Davidson v. Graham*, 2 Ohio State, 131. 1 Greenleaf Evidence, Secs. 66, 68. 3 Id., Sec. 11. Wharton on Neg., Sec. 421, and notes. *French v. Buffalo*, 4 Keyes, 108. *Squire v. Hollenbeck*, 9 Pick., 551. *City of Lowell v. Parker*, 10 Metcalf, 309. *Baltimore and Ohio Railroad v. Rathbone*, 1 West Virginia, 87. *Smith v. N. Y. C. R. R. Co.*, 29 Barb., 132. *Knell v. United States and Brazil Steamship Co.*, 33 New York Superior Court, 423. *Graham v. Davis*, 4 Ohio State, 362. *Yates v. Shepardson*, 27 Wis., 239.

*George E. Pritchett*, for defendant in error, cited *Wolfe v. Supervisors*, 19 How., Pr., 370. *Richards v. Westcott*, 2 Bosw., 602. *Johnson v. Hudson R. R. Co.*, 5 Duer, 21. *Durant v. Palmer*, 29 New Jersey Law, 544. *Pennsylvania R. R. v. McTighe*, 46 Penn. State, 316. *Same v. Weber*, 76 Id., 157. *Milwaukee and Chicago R. R. v. Hunter*, 11 Wis., 160. *McKyring v. Bull*, 16 New York, 297. *Glazer v. Clift*, 10 Cal., 303. *Brazill v. Isham*, 12 New York, 9.

GANTT, J.

The plaintiff in error, alleged in its answer, filed in the court below, that it received the stock from the Atlantic and Pacific R. R. Co., with whom the defendants in error had agreed that the said company, and all connecting lines over which the stock should be transported, should be deemed merely forwarders and not common carriers, and only liable for such damage or injury of such freight as may be caused by gross negligence only, and not other-wise; and the plaintiff in error also plead some denials, which will hereinafter be noticed.

The two main questions raised by the pleadings and the record are:

I.   Whether, under the agreement set up in the answer, the plaintiff is released from the responsibility of a common carrier, in transporting the defendants' property over its railroad, and not answerable for damages to such property, occasioned by its negligence; and,

II.   Whether certain testimony, offered by plaintiff on the trial, was improperly rejected by the referee, before whom the cause was tried.

In support of the agreement referred to in the first proposition, it is claimed, that there is a legal distinction between gross and ordinary negligence; and this view has the support of some authorities.   But we think, that " strictly speaking, these expressions are indicative, rather of the degree of care and diligence which is due from a party and which he fails to perform, than of the amount of inattention, carelessness, and stupidity which he exhib-its;" and, therefore, by whatever name it may be called, it is under every such name a " failure to bestow the care and skill which the situation demands; and, hence, it is more strictly accurate perhaps to call it simply negli-gence."   It is in its proper philological meaning, simply

negligence of a greater or less degree, nothing more and nothing less.

The common law fixed the degree of care and diligence due from railroad companies as common carriers; and a failure to exercise this care and diligence is negligence, without any legal distinction as being gross or ordinary; and the better rule of law, sustained by the weight of authority, is, that "it is against the policy of the law to allow stipulations which will relieve the company from the exercise of that care and diligence, or which, in other words, will excuse them for negligence in the performance of that duty."

In *Farnham v. Camden and Amboy R. R. Co.*, 55 Pa. St., 62, it is said, "that a common carrier cannot limit his liability so as to cover his own, or his servant's negligence." *Pennsylvania R. R. Co. v. Henderson*, 51 Pa. St., 315; and the same general rule is held in Ohio. *Davidson v. Graham*, 2 Ohio St., 139. *Welsh v. Pittsburg, Fort Wayne, and Chicago R. R. Co.*, 10 Ohio St., 75, 76. *Cleveland R. R. Co. v. Curran*, 19 Ohio St., 1, 12, 13.

When a carrier has an established business for carrying articles or property, and "especially if that carrier be a corporation created for the purpose of the carrying trade, and the carriage of the property is embraced within the scope of its chartered powers, it is a common carrier, and a special contract about its responsibility does not divest it of the character." It cannot put off the essential duties of its employment. In some cases decided more recently in the state of New York, the courts have departed from the common law rule in respect to the liability of common carriers, and their power to make special contracts exonerating themselves from negligence; and some other state courts have followed, more or less closely, these decisions; and we are now asked to follow these authorities. On the contrary, we think the

weight of authority so clearly sustains the view we have taken of the law, and the doctrine is so well established, that it is unnecessary now to enter upon an extensive discussion of the question   We shall conform our decision in this case to that of the supreme court of the United States, in the case of *Railroad Company v. Lockwood*, 17 Wallace, 357, where will be found an elaborate and able review and discussion of the whole subject.

As the agreement set up in the answer is in violation of law and against public policy, it does not change the character of the plaintiff from that of a common carrier to that of a bailee for hire.   Hence, such agreement does not lessen the plaintiff's responsibility as such common carrier, nor remove its liability for negligence of its servants.

In regard to the transportation of live stock by a railroad company, we approve and adopt the rule stated in the case of *Kimball v. Rutland and Burlington R. R. Co.*, 26 Vt., 247, 254, in which it is said, that "it is immaterial, whether the transportation of cattle is regarded as their principal employment, or whether it is incidental and subordinate; the fact that they have undertaken such transportation for hire, and for such persons as choose to employ them, establishes their relation as common carriers, and with it the duties and obligations which grow out of it."   The same doctrine is held in: *Kansas Pacific Railway Co. v. Reynolds*, 8 Kan., 634. *Same v. Nichols, Kennedy & Co.*, 9 Kan., 248.   *Wilson v. Hamilton*, 4 Ohio St., 722.   *Palmer v. Grand Junction Railway Co.*, 4 M. & W., 749.

The second proposition is, whether the testimony offered by the plaintiff was improperly rejected by the referee.   On the trial of the cause before the referee, the plaintiff in error called two witnesses; and " offered to prove by them, that the injury to the mules and horses, which defendants in error claimed were injured, was

due to the fault and neglect of said defendants to feed and water and take proper care of the mules." To this testimony the defendants objected, the objection was sustained and the plaintiff in error excepted. It seems clear, that this offer contains new matter, which, if true, would constitute a complete defense to the action. It admits the injury complained of, and seeks to avoid all liability by proof of new matter which would defeat the cause of action. In *Piercy v. Sabin,* 10 Cal., 27, it is said, that "new matter is that which would defeat the cause of action." In *Stoddard v. Onondaga Annual Conference,* 12 Barb., 576, it is said, that "new matter constituting a defense, under the code, must be taken to mean, some fact, which the plaintiff is not bound to prove, in order to make out his cause of action, and which goes in avoidance or discharge of the cause of action alleged in the complaint." No doubt the rule is correctly stated in the above cases, and is consistent with the general principles of pleading; and the above offer is clearly within the rule.

Now the first and second counts in the answer set up new matter in respect to the manner and terms upon which the stock was received to be carried over its road, and deny that the defendant in error sustained any damages or suffered any loss or injury to said mules through the fault or negligence of the plaintiff in error, and the third count denies that the mules and horses were injured and damaged as alleged in the petition, and that defendant in error sustained any damage by reason of injuries received by said mules or horses on the line of its road. It is contended that these denials are tantamount to a general denial; and that, under such plea, the testimony offered is admissible: 1. To negative the averment in the petition that the stock was injured by the negligence of the plaintiff in error, and, 2. To affect and mitigate the damages.

Suppose the pleading be taken as amounting to a general denial, then, is the new matter contained in the offer admissible, under such plea, for the purposes contended for? Now, I apprehend that, under the code, a general denial goes only to every fact stated in the petition, which the plaintiff is under the necessity of proving in order to sustain his cause of action; that such denial is intended only to controvert every material fact alleged in a good petition and no more; and, therefore, that all new matter must be set up affirmatively in the answer.

The code provides that: "The answer *shall* contain:

"*First.* A general or specific denial of each material allegation of the petition controverted by the defendant.

"*Second.* A statement of any new matter constituting a defense, counter-claim, or set-off."

This language is not merely directory; it is imperative, and does not leave it optional with defendant to plead new matter or not; hence, if he would avail himself of new matter as evidence in his defense, he must set it up affirmatively in his answer. It seems clear, that the statute is intended to require each party to make a plain, concise and distinct statement of the facts he intends to prove in order to maintain his cause of action, or his defense to the action, and thereby inform the adverse party of the precise grounds upon which he intends to rely. It is, however, true, that both in England and this country, there was a gradual departure from the earlier doctrine in the science of pleading, and evidence in defense of an action was admitted, under a general *issue*, without much regard to the pleading of facts which constituted new matter of defense. It was an unsafe and unjust departure, giving the defendant undue advantages, which the other party could not foresee and provide against; but the courts of England, it seems, have returned from this departure, and again require new matter, which goes in avoidance or discharge of the

cause of action, to be set up affirmatively. The statute is designed to accomplish the same purpose; and in this regard, it is restrictive in its operation in the admission of evidence. But, under the statute, there is no *general issue*, according to the meaning as applied to it by the rulings under the departure referred to above; it is simply a general denial of all the material allegations stated in the petition, which the plaintiff would be required to prove to make out his cause of action. In *McKyring v. Bull*, 16 N. Y., 308, this question is very elaborately and ably discussed; and it is held that " the word defense, as used in the code, must include partial as well as complete defenses;" and that the law should " be construed so as to require the defendants, in all cases, to plead any. new matter constituting either an entire or partial defense, and prohibit them from giving such matter in evidence upon an assessment of damages when not set up in the answer." In *Piercy v. Sabin, supra*, after stating that *all* new matter of defense must be pleaded, the court say that " this feature of the code is one of the most beneficial and obvious improvements upon the former system. This classification of defenses is simple, logical, and just. Each party is distinctly apprised of all the allegations to be proven by the other, and each is therefore prepared to meet the proofs of his adversary." *Pier v. Finch*, 29 Barb., 170. *Walton v. Minturn*, 1 Cal., 362.

The testimony offered by the plaintiff in error is not admissible, under a general denial, for the purposes contended for, because it would be evidence of new matter, which admits the injury complained of and goes in avoidance or discharge of the cause of action, and is not set up affirmatively in the answer; and, therefore, it is not deemed necessary now to determine what would be proper evidence in mitigation of damages in this case.

Again, it is contended that the findings of the referee

are against the weight of, and contrary to, the evidence. We have carefully examined the evidence, which seems to be fully set forth in the bill of exceptions, and while we find some conflict in it, we are by no means prepared to say that the findings are contrary to law and the evidence. A reviewing court will not disturb a verdict on the alleged ground that it is contrary to evidence, unless it manifestly is so; and will always hesitate to do so, where doubts as to its propriety arise out of a conflict in oral evidence, and the mere difference of opinion between a reviewing court and the court which tried the cause as to the weight of evidence, is not sufficient to reverse a judgment. To justify such reversal, the preponderance of evidence against the findings must be clear, obvious, and decided, or so great as to indicate prejudice, partiality, or corruption on the part of the referee. Edwards on Referees, 150. *Ide v. Churchill*, 14 Ohio St., 377. *Vansteenburgh v. Hoffman*, 15 Barb., 28.

It is said that the referee was not sworn, and, therefore, the proceedings before him in the case are not valid, and should be set aside. But in regard to this question the record is silent, and hence the presumption is that he was properly sworn, unless the contrary clearly appears. The record, however, clearly shows that the parties appeared before the referee, and proceeded with the reference to a final conclusion in the case; and having done so, without objection on the ground that the referee was not sworn, it must be held that the right to object was waived. *Reed v. Talford*, 10 Verm., 568. *Putnam v. Dutton*, 8 Id., 396. *Keator v. Ulster and Delaware Plank Road Co.*, 7 How. Pr., 41.

JUDGMENT AFFIRMED.