CLAUDIUS JONES, PLAINTIFF IN ERROR, v. THE BOARD OF COMMISSIONERS OF SEWARD COUNTY, DEFENDANT IN ERROR.

1. **Taxes:** GOVERNMENT BONDS. On the twenty-ninth of February, 1876, one J., the owner of a bank, purchased, through a bank in New York, government bonds, which, with the premium, amounted to $41,650. The bonds were sold on the seventh of March of that year. *Held,* 1—a mere device to escape taxation, and that the money was taxable; 2—that while the duties of the assessor commence on the first day of March, they continue until he returns his assessment roll to the county clerk, and all taxable property found by him in his precinct during that time is to be assessed.

2. ———: CREDITS. Debts due are " credits " within the meaning of the revenue law, and are to be assessed as property.

3. **Pleading:** NEW MATTER IN DEFENSE. Where the answer to a petition is a general denial, the evidence must be confined to proving or disproving the facts stated in the petition. New matter constituting a defense must be pleaded.

ERROR to the district court for Hamilton county. Tried below before POST, J.

*Norval Bros. and George W. Lowley,* for plaintiff in error, cited Const. art. 9, sec. 1, 6, *People v. Hiber-*

NOTE.—See *A. & N. R. R. v. Washburn,* 5 Neb., 125. *Peet v. O'Brien,* Id., 362. *Allen v. Saunders,* 6 Neb., 436. *B. & M. R. R. v. Lancaster County,* 7 Neb., 38.—REP.

*nia Bank*, 51 Cal., 243, in support of the proposition that debts due are not property, and therefore are not taxable ; and further argued that the purchase of the bonds was in the ordinary course of business, and not to evade taxation, referring to the evidence, particularly to the ledger, showing purchases of bonds other than those in question, in 1873 and 1876.

*McKillip & Page*, for defendant in error, cited *Smith v. The State*, 43 Ala., 344. Gen. Stat., 900, Sec. 15. *Minturn v. Hays*, 2 Cal., 590. *Holly Springs v. Marshall Co.*, 52 Miss., 281. *Hunt v. McFadgen*, 20 Ark., 277. *Ogden v. Walker*, 59 Ind., 460. *Mitchell v. Commissioners*, 9 Kan., 344. S. C. 91 U. S., 206.

MAXWELL, CH. J.

This case was before this court in the year 1877, (5 Neb., 561), but, the record being incomplete, it was remanded to the district court, with instructions to direct an issue to be formed, and to take proofs and determine to whom the plaintiff's alleged indebtedness was due, the actual amount thereof, and the actual amount of taxable moneys and credits he was possessed of at the time the assessment was made. In conformity with these directions the board of county commissioners of Seward county filed a petition in the district court of that county alleging that the actual amount of taxable moneys and credits possessed by Jones on the first day of March, 1876, was the sum of $65,000, and that the assessor for that year placed his assessment at the sum of $32245.19, being the amount of moneys and credits possessed and owned by him above all debts which the law authorized him to deduct. To this petition Jones filed an answer denying all the allegations therein contained inconsistent with his sworn assessment list, a copy of which

is attached to the answer. From this list it appears that the whole amount of taxable moneys and personal property returned by him amount to the sum of $643.

A change of venue was taken to Hamilton county, where in the year 1878 a trial was had, the cause being submitted to the court without the intervention of a jury. There are thirty-one special findings by the court, to nearly all of which no objection is made in this court. The court found that the amount of taxable moneys and credits possessed by Jones over and above all *bona fide* debts at the time the assessment was made in the year 1876 was the sum of $11,032, which sum was to be added to the list of personal property returned by Jones, and the treasurer directed to collect the taxes on the same, and the county to recover costs. A motion for a new trial having been overruled, the plaintiff brings the cause into this court by petition in error.

The district court finds that the total amount of deposits on the first day of March, 1876 [in plaintiff's bank] was the sum of $94,858, of which amount $40,-700 was the individual credit of the defendant. That the balance actually due depositors was $54,158. The court also finds that on the first day of March, 1876, the plaintiff in error owned United States bonds of the value of $41,650; that the same were ordered to be bought on the twenty-third day of February, 1876; that said bonds were converted into money on the seventh day of March, 1876, and returns received therefrom on the thirteenth of the same month; that the profit of the transaction, after paying all costs and expenses, was $33. · The court also finds that the plaintiff in error " had bought and sold other United States bonds, but at what time and in what amounts the court cannot say."

It appears from the record that the bonds in ques-

Jones v. Seward County.

tion were purchased for the plaintiff on the last day of February, 1876, by the Chemical National Bank of New York, and that they were retained in the possession of the bank until they were sold on the order of the plaintiff on the seventh day of March of that year. The court finds that these bonds were purchased for the purpose of evading taxation, and for the purpose of avoiding the payment of a just proportion of taxes, and that the purchase in effect was a fraud upon the revenue law. This is the principal error relied on.

It appears from the bill of exceptions that the plaintiff is the sole owner of a bank at Seward, known as the State Bank. The amount of capital stock of this bank, if anything, does not appear in the record. Nor is there anything to show that the bank is taxed in any way except as it may be done through the plaintiff. It is conceded that United States bonds are exempt from taxation, and that money invested in good faith in such securities cannot be taxed. The court below found that the plaintiff did not purchase the bonds in question in good faith. Is this finding sustained by the evidence? We think it is. The plaintiff does not claim that the money was intended by him to remain invested in bonds. On the contrary it appears from his own testimony that the investment was merely temporary.

It is evident that the investment, if such it can be called, was not made for profit, although there was a small profit, less, however, than the interest accruing on the bonds during the time he was the owner. The plaintiff appears to have had no communication with the agent purchasing the bonds, the business being done through one of the Omaha banks, and his purchases of United States bonds at other times, so far as appears, were insignificant compared to this.

But it is said fraud is never presumed, but must be proved. This is true. But in what manner is it to be proved? Judge Story says: "Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." Story's Eq. Juris., sec. 187. And in speaking of the proof it is said: " On the other hand, neither of these courts insists upon positive and express proofs of fraud; but each deduces them from circumstances affording strong presumptions." Id., sec. 190. In but few instances, comparatively, can fraudulent intent be shown by direct testimony, and therefore it is generally established by circumstantial evidence. In our opinion the testimony establishes the fact that the bonds in question were purchased by the plaintiff, not with the design of making a permanent investment, but for the sole purpose of evading taxation.

In the case of *Mitchell v. Comm's of Leavenworth Co.*, 9 Kansas, 344, one Mitchell had on deposit in a bank in Leavenworth $19,350, in current funds, on the twenty-eighth of February, 1870, and on that day drew a check for his entire deposit, payable to himself in legal tender treasury notes, and upon receiving said notes inclosed the same in an envelope and immediately returned them, sealed up, to the bank as a special deposit. On the third day of March, 1870, he deposited all of said money in the bank as an ordinary deposit of current funds. In June of that year Mitchell made a sworn statement of his personal property, money, and effects liable to taxation, the aggregate value being the sum of $4,017. The county commissioners added $9,000 to his assessment.

The court held that the sole purpose of the transaction was to escape taxation, and an injunction to restrain the collection of the tax was denied. This judgment was affirmed by the supreme court of the United States.   1 Otto, 206.

Where a change is thus made for the sole purpose of defrauding the government of its just dues, and to enable a party to escape the payment of his just proportion of the taxes imposed by law, he cannot shelter himself behind such temporary change in the character of his funds to escape taxation.

But this money is taxable for another reason.   Section 15 of the revenue law [Gen. Stat., 900], provides that " all personal property is to be listed, assessed, and taxed in the county in which the owner resides, on the first of March, of the then current year; but if the owner resides out of the state, it is to be listed and taxed where it may be at the time of listing."   Section 18 provides that " when a person is doing business in more than one county, the property and credits existing in any of the counties are to be listed and taxed in that county, and credits not existing in nor pertaining especially to the business in any one county, are to be listed and taxed in that county where his principal place of business may be."   Section 26 provides " that the assessors shall meet on the first Monday of April in each year, for the purpose of equalizing their assessments, and shall return their lists to the county clerk on or before the second Monday of the same month."   Section 4 provides that " all taxable property, personal and real, shall be listed and valued each year, at its actual value at the place of listing."   Section 8 requires the person listing to make oath to the correctness of the list.   Where personal property is removed from one county to another, such property is to be listed in the county the owner re-

sided in on the first of March; but it was not the design of this provision to permit property to escape taxation altogether, but merely to avoid a conflict of jurisdiction in the collection of taxes.

The assessor is required to assess all taxable property found by him in the precinct. The party listing is required to swear that he has listed *all* his property—not what he possessed on the first of March—but what he then possesses. There is reason in this. The amount of personal property possessed by an individual, ordinarily, will not vary materially during the time the assessment is being taken. The duties of the assessor commence on the first day of March, and continue until he delivers his assessment roll to the county clerk; and in the intervening time it is his duty to assess all taxable property found in his precinct. As to real estate, the lien for taxes dates from the first day of March; and this, in the absence of a contract, determines the liability for taxes, as between vendor and vendee, and perhaps in some other cases. But taxes are not a lien upon personal property, and are merely a personal charge against the owner. The lists are mere statements of the amount of property possessed by each tax-payer, and it is the duty of the assessor to assess all the taxable property in his precinct. If it were otherwise, it might be very easy for a party to conceal a portion of his taxable property for a few days about the first of March, and thus evade the law. But this can rarely be done during the entire period the assessment is being taken in the precinct. The law does not limit the liability of a party to such property as he possessed on the first of March, and the court cannot. The plaintiff's assessment having been made on the eleventh day of March, 1876, the money was taxable.

Objection is made that the plaintiff was not per-

mitted to prove that other property in Seward county for that year had been assessed much below its real value. The petition in the court below alleged that Jones was possessed of $65,000 of taxable moneys and credits in March, 1876. To this petition the defendant in the court below (plaintiff in error) filed a general denial. The rule is well settled in this court that under such an issue the only question is the truth of the facts stated in the petition. *The A. & N. R. R. v. Washburn,* 5 Neb., 124. *McKyring v. Bull,* 16 N. Y., 308. All new matter of defense must be pleaded so that the adverse party may be apprised of the proofs to be offered, and be prepared to meet them. The testimony was therefore properly excluded.

The plaintiff in error insists that *debts due* are not *property,* and are therefore not taxable. Section 2 of the revenue law provides (after certain specified exemptions), " all other property, real and personal, within this state, is subject to taxation in the manner herein directed. * * Money, whether in possession or on deposit, and including bank bills, money, property or labor due from solvent debtors, on contract or in judgment, and whether within this state or not; mortgages, and other securities, and accounts bearing interest," etc. Section 3 provides that the term "credits" as used in this chapter includes every claim and demand for money, labor, or other valuable thing, etc. [Gen. Stat., 897.] It is very clear that credits are property, and as such are taxable.

There is no error in the record of which the plaintiff in error can complain. The court would have been justified from the evidence in rendering judgment for a much larger amount than has been done in this case. The plaintiff was exempted from taxation for a large amount of legal tender notes taken in, apparently, from his depositors. These were a part

of his assets for the payment of his deposits, and he could not select out particular bills from such assets and claim that they were to be deducted from the gross amount of his moneys and credits. The case clearly falls within that of the *Canal and Banking Co. v. New Orleans*, 9 Otto, 97. Taking the conduct of the plaintiff in error throughout this transaction, and it certainly conveys to our minds the impression that the whole scheme was an attempt on his part to evade the payment of taxes, and in effect a fraud on the revenue.

The judgment of the district court is clearly right, and is affirmed, with costs.

JUDGMENT AFFIRMED.