# CHARLESTON.

WEST VIRGINIA MORTGAGE & DISCOUNT CORPORATION *v.* T. NEWCOMER, *Assessor, Etc., et al.*

(No. 5624)

Submitted March 9, 1926.    Decided March 30, 1926.

TAXATION—*Where Domestic Mortgage and Discount Company, a Few Days Before Beginning of Tax Year, to Evade Taxation, Executed to Nonresident Note on Purported Purchase by Brokerage Firm of Nontaxable Securities, Which Were Never Delivered to Pretended Purchaser and Soon After Beginning of Tax Year Brokerage Firm Sold or Repurchased Securities and Liquidated Note, Such Domestic Company Was Not Entitled in Tax Return to Deduct From Amount of Money Credits and Investments Amount of Note (Code, C. 29, §§ 57, 63, 67).*

Where mortgage and discount company of this state, a few days before the beginning of a tax year, for the purpose of evading taxation, executes to a non-resident brokerage firm its note payable a few days after the beginning of the tax year, for a sum equal to the full amount of its money, credits and investments, and such brokerage firm by letter purports to have purchased for account of such taxpayer United States or other non-taxable securities and to have attached the same to such note as collateral security, which securities are never delivered to the pretended purchaser, and the parties at the same time and as a part of the same transaction agree that as soon after the beginning of the tax year as is advantageous the brokerage firm shall sell or repurchase the securities and liquidate such note, and they are so disposed of and the note returned, the mortgage and discount company is not entitled, in the return of its money, credits and

investments for taxation, to deduct from the amount thereof the amount of such note, the same not being a bona fide debt within the meaning of section 67 of chapter 29 of the Code.

HATCHER, WOODS, JUDGES, absent.

(Taxation, 37 Cyc. p. 1029.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by the West Virginia Mortgage & Discount Corporation against T. Newcomer, Assessor, etc., and others. To review a judgment affirming an assessment and finding of the Board of Equalization and Review, which approved defendant's denial of plaintiff's right to deduct from its assessment an item of claimed indebtedness, plaintiff brings error.

*Affirmed.*

*Harold A. Ritz, D. C. T. Davis, Jr.,* and *Staige Davis,* for plaintiff in error.

*John T. Simms,* for defendants in error.

MILLER, JUDGE:

We have here for review, on the petition of the plaintiff, the judgment of the circuit court, rendered on December 9, 1925, affirming the assessment and finding of the board of equalization and review, made on July 24, 1925, which itself approved the action of the defendant Newcomer, assessor, in disallowing and denying the petitioner the right to deduct from its moneys, credits and investments returned to the assessor for the year 1925, the item of $1,510,708.33, which was claimed by it as an indebtedness owed to the brokerage firm of C. F. Childs & Company, of Chicago, Illinois, represented by its note dated December 23, 1924, whereby on January 10, 1925, plaintiff promised to pay to the order of C. F. Childs & Company the amount of the item claimed as a deduction, negotiable and payable at the office of the payee in Chicago, with interest thereon at the rate of 3¾% per annum, also reciting a deposit as collateral of one thousand certificates of deposit

of the United States Treasury, due 1944/54, bearing interest at the rate of 4% per annum, for $1,500.00 each, further described by numbers, and further providing that: ''Full authority is hereby given the said payee, or any other holder of this note, upon the non-performance of this promise, to sell the said collaterals either at private sale or public auction at the option of the holder hereof, without demanding payment of this note or the debts thereon, and without any notice of intention to sell or of the time or place of sale. The proceeds shall be applied first to the payment of the expenses of the sale, and the residue, or so much thereof, as may be necessary, to the payment of this note. At any such sale of any of said collaterals at public auction, the said payee or any other holder of this note may become the purchaser thereof.''.

The evidence taken before the board of equalization and review, shows that on receipt of the return by plaintiff to the assessor, the latter notified Paul J. Newlon, plaintiff's vice president, of his objection to the return, and his reasons therefor. Later, in company with counsel, the assessor called at the place of business of plaintiff, and went over the subject and heard Newlon's explanation of the item claimed as a deduction; and both the assessor and counsel notified Newlon that the deduction would not be allowed, because of the character of the transaction, it being deemed fraudulent and to amount to an attempted evasion of the law, and not a proper item for deduction under the statute. The evidence also shows that the transaction was finally arranged for between Newlon and a representative of C. F. Childs & Company in Cincinnati, and was concluded on December 23, 1924, by the execution of the note and a pledge of the certificates of indebtedness of the United States. The plaintiff never saw these bonds or certificates, and did not know in fact that C. F. Childs & Company ever purchased for its account any such securities, except from the letters received. These certificates were never within the jurisdiction of this state. In their letter of December 23, 1924, C. F. Childs & Company simply expressed pleasure in confirming their sale to plaintiff of $1,500,000 U. S. Treasury 4S, 1944/54, at 100⅝ and interest, net,'' and said, we ''enclose herewith our statement of the

transaction showing the numbers and denominations of the bonds we have reserved for your account *pending payment and disposition."* The statement of the brokers of the conclusion of the transaction purports to evidence a purchase from the plaintiff on January 10th, of the alleged securities at 100½ and accrued interest, amounting to $1,511,566.67, not a sale by C. F. Childs & Company for default in payment of the note.

The suggestion is made in briefs of counsel that the assessor was derelict in not pursuing strictly the statute, in investigating the question of the *bona fides* of the note deducted in plaintiff's return. Any irregularity in that particular becomes unimportant, for this whole question was gone into on the hearing before the board of equalization and review, when the conclusion of the assessor was confirmed; and appellant was again accorded a hearing on the same question before the circuit court on writ of error there, where the conclusions of law and fact by said board were approved. The *bona fides* of the note was a question of fact, for the assessor in the first instance, and for the board of equalization and review after him, by whom the fact was again determined; and it may well be doubted whether this court should presume to determine the fact against the judgment of the assessing officers, unless it be presented as one of law.

Before proceeding to examine the several propositions of law relied on and the authorities cited by counsel, pro and con, we pause to observe that our decision in the main must be predicated on a proper construction of our statute law involved therein.

Section 67 of chapter 29 of the Code, relating to the subject of deductions, provides that before such deduction shall be allowed, the person desiring it shall be examined on oath as to each debt which he desires to have deducted, when payable, and the amount thereof, including interest to the first day of the assessment year, and that after such examination, *if the assessor be satisfied* that the debts so claimed are *bona fide* and correct in amount, he shall allow and deduct the amount of the same from the valuation of the debtor's money, credits and investments. In this case the officer of the plaintiff was

not examined on oath by the assessor, but he was examined and gave substantially the same evidence under oath before the board of equalization and review that he covered by his responses to the assessor. He satisfied neither the assessor nor the board, nor the circuit court on appeal, of the *bona fides* of the note sought to have deducted. There is another significant proviso in the last clause of section 67, as follows: "And any person who shall make a false statement, or shall state fictitious debts for the purpose of having the amount thereof deducted as herein provided for, shall be guilty of a misdemeanor," etc. A fictitious debt would be a feigned one, not real or genuine; one, we should say, arbitrarily invented and set up, to accomplish an ulterior object; in a case like this to accomplish a fraud upon the State and the revenue laws for the support of the State or nation. Another cognate provision of the same chapter is found in section 63, providing what personal property is taxable: "Any person who any time before the assessment year transfers by loan, deposit or gift, any money, credits, notes, bonds, stocks, certificates of deposit, or other credits, which are subject to taxation, to any one, who does not return a list of taxation as of the day on which the assessment year commences, including such property, transfers, loans, deposits, or gifts, if made with the intention of evading taxation, shall be deemed and treated as illegal and fraudulent, and the assessor shall assess such property for taxation to the party who makes such transfers, loans, deposits or gifts as aforesaid." We do not wish to be understood as intimating that the provision of section 63 in terms covers *bona fide* debts, but only transactions of kindred character, and as showing the spirit of the whole subject of taxation covered by said chapter 29. Another provision of the same chapter urged upon us for consideration in this connection, is contained in section 57, relating to property exempt from taxation, as follows "but no property shall be exempt from taxation which shall have been purchased or procured for the purpose of evading taxation, whether temporarily holding the same over the first day of the assessment year or otherwise." And we observe another provision of the same section having some relation to the subject, namely: "And,

whenever from any cause, such commissioner (the state tax commissioner) shall determine that any trust is not *bona fide,* or that it was created or is carried on for the purpose of evading taxation, then he shall withdraw his approval thereof by written notice served upon any trustee in such trust, and thereafter all property covered by such trust shall be subject to taxation.''

Notwithstanding the provision of section 67, especially applicable to the case before us, and the spirit of the other provisions of the statute cognate in character, plaintiff's counsel say that because of the nature of the transaction with Childs & Company, the alleged purchase of the United States securities and the giving by plaintiff of its note, in the way and manner already described it became indebted *bona fide* to the brokers in the sum named in the note, and was by virtue of the statute entitled to the deduction claimed; and that the assessor and the board of equalization and review were bound, as the circuit court was, and as we must be, to accept the transaction as *bona fide* and grant the relief sought from the alleged unlawful assessment.

For a definition of a *bona fide* debt deductible as such, appellant's counsel cite and rely on 3 Cooley on Taxation (4th ed.), section 1159, page 2328, as folows: ''In order to be deductible as a debt, the obligation must be a valid and subsisting one, and within the legal meaning of the word 'debt' or 'indebtedness'.'' As an example of a debt not within the definition, this author, in the same connection, says: ''For instance, an indebtedness existing merely as a convenience in bookkeeping, and not a *bona fide* indebtedness, cannot be deducted.'' In *Hoagland* v. *Merrick County,* 81 Neb. 83, cited by Mr. Cooley, the definition of a debt covered by the statute in that state was defined as follows: ''A *bona fide* debt is one that is owing to another—one that could be enforced in a court of justice.'' It was clear in that case that the debt in question was not within the definition, for it was merely a debt of the taxpayer to himself, a bookkeeping debt by one branch of his business to another branch, the plaintiff being both debtor and creditor. Considering the facts of the case in hand, was there any really subsisting indebtedness on the

return day for taxation. The transaction took place on December 23rd; it began about December 15th; and the evidence satisfies us that although the transaction took a legal form of sale and purchase of the bonds, and the giving of the plaintiff's note, the contract evidenced in effect a resale of the bonds to the broker to be executed on January 10th, in satisfaction and in extinguishment of the note. The evidence shows no subsequent agreement of the parties as to price or disposition of the proceeds of the sale; and the letter or statement of the transaction on that date simply is: "Bought of the West Virginia Mortgage & Discount Corporation, Charleston, West Virginia, $1,500,000 U. S. Treasury 4S. 1944/54, 100½, $1,507,500. Interest from Dec. 15th to Jan. 10th, ........... months 25 days, $4,166.67—$1,511,566.67." The business of the appellant was not disturbed; it had the use of all its assets in its business; it was evidently calculated that the sale of the bonds agreed would wipe out the note and interest automatically, as it really did. On the evidence before the board of equalization and review, the assessor and the board might well have concluded that the appellant in fact owed no debt which it had not discharged.

In his testimony Newlon, when closely questioned as to the time of sale, first said he thought the securities were sold on the 9th (meaning January 9th); but in the same connection he testified: "Q. You told them on the 9th to sell? A. No, I told them previously. * * * Our note was due on the 10th, yes, sir. Q. What date did you advise them to sell the government bonds? A. I told them to get the best price possible for them. Q. On what date did you tell them that? A. Well, that was along in December, in conversation with the Cincinnati representative. I asked him about what time during the month would be the best time to dispose of the government securities. * * * And he said along about the 9th or 10th, up to the 15th. Q. You had that conversation with the representative of Childs about the time of the negotiations, didn't you? A. Yes, sir. Q. And then this transaction was negotiated at that time with the very idea of disposing of them about the 10th, if that was the advantageous time? A. Whenever it was to our advantage to dispose of

them.'' Apparently some letters and telegrams were sent by plaintiff to C. F. Childs & Company, not one of which appears in the record; only what are called ''their official letters'' of C. F. Childs & Company, self-serving in character, were introduced in evidence; so we have but one side of the correspondence to guide us to a correct conclusion as to the real character and purpose of the transaction. We think it plain, however, that the creation of the debt and its discharge constituted but a single transaction, and that no debt in fact existed after the transaction formally creating it which was not in legal effect discharged at the same time by a contemporaneous appropriation of the securities pledged, if in fact any such securities were purchased for plaintiff's account.

We are cited by defendant's counsel to a number of decisions from other jurisdictions, for the general proposition that a taxpayer can not lawfully invest his capital in non-taxable securities just before the commencement of the assessment year, not intended to be permanent, nor to continue until the interest or will of the purchaser dictates a discharge, but with the sole purpose of escaping taxation, and with the determined purpose of reconverting its means as soon as practicable after the day of assessment, the basis of the holdings being that such transaction is not actual or *bona fide,* but colorable and fraudulent only, and actuated by a fraudulent motive. *Holly Springs, Etc. Co.* v. *Board of Supervisors,* 52 Miss. 280; *Jones* v. *Seward County,* 10 Neb. 154; *Dixon County* v. *Halstead,* 23 Neb. 697; *State ex rel. Jacobs* v. *Assessors, Etc.,* 37 La. Ann. 850; *Mitchell* v. *Board of Commissioners of Leavenworth County, Kansas,* 91 U. S. 206; *Shotwell* v. *Moore,* 129 U. S. 590.

It can not be controverted that a citizen acting in good faith, may of right invest his money in non-taxable government or other non-taxable securities, even though his object be to avoid payment of taxes; the law gives him that right. And we are cited to decisions from other states, sustaining the proposition that one who borrows money and invests it in non-taxable securities, is entitled, if the statute gives him the right, to deduct the indebtedness thus created from the amount of his money, credits and investments for the purpose of estab-

lishing a basis for taxation, the debt being real, *bona fide,* and not colorable and feigned or fraudulent in fact. Among the cases cited are: *People ex rel. Thurman, Respondent,* v. *John Ryan, Jr., et al., Appellants,* 88 N. Y. 142; *Stilwell* v. *Corwin,* 55 Ind. 433; *Hutchinson* v. *Board of Equalization,* 67 Iowa, 182; *United States* v. *Isham,* 84 U. S. 496.

But as already indicated, the view we take of the facts in this case renders it unnecessary for us to go into or review the cases relied on by counsel for plaintiff. We prefer to rest our decision wholly upon what we deem a proper construction of our statute and the fact that although there was a colorable transaction between plaintiff and C. F. Childs & Company, by which plaintiff attempted to create a fictitious debt which it might deduct from the amount of its money, credits and investments in its return to the assessor, it was colorable only, and in fact no *bona fide* debt within the meaning of our statute was owing by it on the first day of January, 1924, for which it was entitled to such reduction. The assessor and the board of equalization and review were therefore justified in denying the offset or deduction; and there is no error in the judgment of the circuit court complained of on the present writ.                                       *Affirmed.*