DAVID H. MITCHELL V. COMM'RS OF LEAVENWORTH CO., *et al.*

TAXATION; *Personal Property—Evading Assessment.* Where a party has a general deposit of current funds in a bank, and on the 28th day of February gives a check for such funds payable in legal tender notes, and notes of that character are handed to·him, and he makes a special deposit· of such notes in the same bank, and three days afterward changes his special deposit of legal tender notes into a general deposit of current funds, and where the whole transaction is for the sole and express purpose of escaping taxation on such deposit, *held*, that as to the government the transaction was void, and the actor not entitled to the intervention of the courts to be relieved from the taxes imposed on such deposits.

*Error from Leavenworth District Court.*

INJUNCTION, brought by *Mitchell* to enjoin the collection of $468.05, including penalty and costs, levied as taxes on a certain personal-property assessment for the year 1870. The board of county commissioners, sheriff, and treasurer of Leavenworth county, were joined as defendants. The action was tried at the September Term 1871. The district court found the conclusions of fact and law as follows:

"*Conclusions of Fact:* 1st.–Plaintiff Mitchell has been a resident of Delaware township, in the county of Leavenworth, for several years last past. In June 1870 plaintiff made out, subscribed and swore to, on a blank left with him by the township assessor, a statement of personal property, money and effects owned by him and liable to taxation in said county for said year, the aggregate value amounting to $4,017, after deducting the amount exempt by law; and on the 20th of the same month the same was duly returned to and filed with the county clerk of said county, and before commencing this action the plaintiff paid the entire tax

assessed on said $4,017. 2d.–Previous to the first day of March 1870, the plaintiff for a long time had had a banking account with Scott & Co., in the city of Leavenworth, in this state, and on the 28th of February 1870 had on deposit with them $19,350 in current funds, belonging to himself, and on that day he gave said house a check for his entire deposits, payable to himself in United States legal-tender treasury notes, commonly called greenbacks; and the plaintiff then received said amount of said legal-tender notes and inclosed them in a sealed envelope and immediately returned them thus sealed up, to the bank, to be kept by it in the vault of the bank; and afterward, and on the 3d of March 1870, plaintiff deposited all of said money with said bank as a general and ordinary deposit of current funds. None of said sum was included in the statement made as aforesaid to the township assessor. The funds thus on deposit by the plaintiff were drawn out of the bank as aforesaid, and left on special deposit, and redeposited as aforesaid by the plaintiff for the sole and express purpose of escaping taxation on the funds so belonging to him for the year 1870. 3d.–On the 22d of October 1870, the plaintiff and other persons were sworn and examined before a committee appointed by the board of county commissioners, for the purpose, touching and concerning the facts set out in the last above finding, and a statement was then made, and certified to by the county clerk, of the facts testified to by the plaintiff and each of said persons, and the same was duly filed by said clerk; and thereupon, on the same day, the amount of the assessment against the plaintiff was increased in the sum of $9,000, and the same was afterward duly put on the assessment and tax-rolls by the county clerk; but before putting the same on said assessment and tax rolls the county clerk gave the plaintiff verbal notice of the raising of the assessment against him. 4th.–On the 2d of January 1871 the plaintiff applied in writing to the board of county commissioners to have said amount of $9,000, so assessed against him, stricken off, and the tax levied thereon remitted; but the board refused so to do, and ordered that the action so increasing the assessment against the plaintiff should stand, and the tax levied thereon be collected. 5th.–The tax levied on said $9,000, including penalty and costs, amounted to $468.05, none of which has been paid. 6th.–The treasurer of said county duly issued a tax warrant to the sheriff of said county for the collection of

said tax, and at the time this suit was commenced said sheriff was proceeding in a due manner to execute such tax warrant.

"*Conclusion of Law:* The court finds that the plaintiff is not entitled to the remedy sought in this action; that the tax so levied and remaining unpaid is valid and legal, and the defendants the board of county commissioners of said county should recover from the plaintiff the amount of said tax, penalty and costs, amounting to $468.05, and that the temporary injunction heretofore allowed should be dissolved, and all the defendants should recover their costs against the plaintiff."

Judgment was given in favor of the defendants in accordance with said findings, and *Mitchell* brings the case here for review.

*Pendery & Goddard,* for plaintiff in error:

According to the findings of the court, the plaintiff, on the first day of March 1870, was the owner of $19,350 in United States legal-tender notes, which are not subject to taxation. 7 Wallace, 26; 32 Ind., 27.

On the 28th of February 1870 the plaintiff was the owner of $19,350 in money that was taxable under the laws of Kansas, and on that day he exchanged with the banking-house of Scott & Co. said sum for the "legal-tender notes." What money was taxable on the first day of March 1870 under and by virtue of the statutes of Kansas? Certainly not the "legal-tender notes" on that day owned by the plaintiff. The law presumes that Scott & Co. properly listed their personal property on the first day of March 1870. The findings show that on February 28th Scott & Co. became the owners of the current funds which were taxable, by exchanging "legal-tender notes" for the same, with this plaintiff. Had not the plaintiff a right to make such disposition of his own private current funds as he saw fit? Had he not a right to make a disposition thereof even for the "sole purpose of escaping taxation thereon?" We think he had a right, even to destroy them if he saw fit, for the "sole purpose of escaping taxation;" and it makes no difference whether he disposed of them one day or one year before the said first day of

March. Whoever was owner thereof on the said first day of March was liable to taxation thereon.

One class of money was taxable, and the other not. Government in issuing "legal-tender notes," bonds, etc., made them exempt from taxation. Act of February, 1862, 12 Stat. at Large, 346. See also Act of March 3d, 1863, id., p. 709.

*F. P. Fitzwilliam*, for defendants in error:

1. Is the owner of taxable personal property relieved from taxation when has converted the property into United States legal-tender notes, for the sole and express object of escaping taxation?

Taxes are a burden or charge for public use, imposed upon the owner of property, which the law requires him to discharge. Tax Law, §§ 4, 10, Gen. Stat., 1022; 1 Kas., 455. The principle of equality and justice requires that each person should contribute towards the public expenses his proportional share, according to the advantages which he receives, as it lies at the foundation of our political · existence. 9 Wis., 418; 11 Johns., 80. In the language of this court, "a proper tax is a debt due the government, which the property-holder has no more right to withhold than the most sacred debt of a private nature. To withhold it, therefore, is a public wrong, which affects the whole community, and which cannot be justified or excused by any rule of equity or sound morality." *Gulf Rld. Co. v. Morris*, 7 Kas., 210, 230.

2. It is a general proposition, that an agreement to do an unlawful act cannot be supported at law—that no right of action can spring out of an illegal contract; and this rule, which applies not only where the contract, which is expressly illegal, but where it is opposed to public policy or founded on an immoral consideration, is expressed by the well-known maxim, *Ex turpi causa non oritur actio*. The agreement of plaintiff with Scott & Co., to change his banking account into a special deposit of legal-tender notes on the 28th of February, and redeposit them on the 3d of March, and

reopen his banking account, having for its object the sole and express purpose of escaping taxation thereon, and being an attempt to evade the state law by a trick, is void upon maxims of public policy, and he will not be permitted to found an action thereon for relief in a court of justice. *Lappin v. Nemaha Co.*, 6 Kas., 403; 11 Mass., 549; 17 Mass., 258.

3. That plaintiff is not entitled to the relief he asks, attention is directed to a few of the many decisions wherein it has been expressly held that such transactions as that relied on by plaintiff to escape payment of taxes, is prohibited and void. 4 D. & E., 4; 3 B. & P., 35; 8 Term R., 95; 1 Binney, 120; 3 Cranch, 247; Ga. Decis., 39; 5 Barn. & Ald., 343; 2 Wash. C. C., 98; 11 Wheat., 258. And see 1 Pow. Cont., 195.

That United States legal-tender notes are exempt from taxation, is conceded to be the law of the land. But the tax, about which complaint is made, was not a tax assessed on property exempt under the laws of the United States. It was a tax assessed under the laws of the state on certain taxable property belonging to plaintiff, which, in view of the law, had not changed its character. He attempted to evade the statutes of the state, and thereby escape taxation. He will not be permitted to so use his property as to injuriously affect the community. When this is attempted, the law condemns the transaction as void upon considerations of public policy, and treats the property as if no change had been made in its character. While he was the owner thereof, with exclusive control over it, yet he held it subject to the necessities of the state, and he could not so use it as to affect her claim thereon. *Sic utere tuo, ut alienum non lædas,* is the maxim of the law that applies to plaintiff's case. But this court has declared that a party shall not receive protection for his own wrongful act: "We think that a breach of faith and good morals is the strongest kind of a reason for refusing an injunction to protect the party in the exercise of such bad faith and bad morals. A party cannot encourage a wrong, and then ask a court of equity, by an injunction, to protect

him from the anticipated consequences of such wrong."
*Sleeper v. Bullen*, 6 Kas., 306.

Courts will not construe a statute so as to suffer it to be
evaded: 15 Johns., 382. And a fraud upon, or evasion of a
statute, will not be tolerated in a court of justice. 9 Johns.,
356; 10 id., 461; 15 id., 510. A fraud upon a statute is a
violation of the statute: 2 Pct., 536. Testing plaintiff's
claim by the above rules, he cannot maintain his action.

The opinion of the court was delivered by

KINGMAN, C. J.: On the 28th of February 1870, the
plaintiff in error had a large amount of money in current
funds on deposit with Scott & Co., bankers of Leavenworth.
On that day he gave the bank a check payable to himself
in legal-tender treasury notes. He received the legal-
tender notes, inclosed them in a sealed envelope, and
immediately returned them, thus sealed up, to the bank;
and three days afterwards deposited all of said money
as a general and ordinary deposit of current funds. The
whole transaction was for the sole and express purpose of
escaping taxation on the funds so used for the year 1870.
Did he by this transaction so place his property as to relieve
it from the burdens of taxation? and is he in a situation in
which he can invoke the aid of a court of equity to restrain
the taxes levied upon those funds? It is conceded that
United States legal-tender notes are exempt from taxation.
It is also conceded that the transaction between plaintiff in
error is one not in contravention of law, of itself. But it is
contended, that the motive being to defraud the government
of its just dues, and enable the plaintiff to escape the just
burdens that society imposes on him, enters into and vitiates
the whole transaction, and that a court of justice, sitting as a
court of equity, will not lend its aid for the accomplishment
of any such purpose. And we think the argument a good
one. Reference is made to the principles stated in the brief
of defendant in error, and the authorities cited to sustain
them. The judgment is affirmed.

All the Justices concurring.