Durham *v.* The State, *ex rel.* Anderson, Prosecuting Attorney.

No. 609.

DURHAM *v.* THE STATE, EX REL. ANDERSON, PROS. ATTY.

TAXES.—*Fraudulently Converting Property.—Forfeiture.—Sufficiency of Complaint.—Statute Construed.—To Whom Taxed.*—In an action against a person for forfeiture for fraudulently converting taxable property into property not subject to taxation, the complaint alleged in substance that the defendant, on the 31st day of March, 1888, having a large sum of money on deposit in a certain bank, drew his check on said bank for $24,025, and requested and received therefor the said sum in what is commonly called greenbacks; that upon receiving the said sum of money he enclosed it in a package and placed the same for safe keeping in said bank, where he kept the same until the 11th day of April, 1888; that he then withdrew said package and placed the amount thereof ($24,025) on deposit in said bank, with which he had a contract to keep not less than $100,000 on deposit for one year, beginning January 11th, 1888; that he drew said money with the intention of holding it only a few days, until after April 1st, 1888, with the fraudulent intent to prevent such property from being listed for taxation, and of evading the payment of taxes thereon; that in listing his property for taxation he, said defendant, with the intent aforesaid, failed and refused to list for taxation the said sum of $24,025, which he had temporarily converted for the purpose aforesaid. Wherefore, etc.

*Held,* that the complaint set forth facts sufficient to constitute a fraudulent attempt against the public revenue, as provided for by law, and subjecting the defendant to the penalty therein provided.

*Held,* also, that the terms of the statute are general, and not limited to transactions whereby taxable property is removed from the State, or whereby it is transferred to a non-resident.

*Held,* also, that where taxable property has been temporarily converted for the purpose of avoiding taxation, it is to be taxed to the person who makes such conversion, if the assessor discovers that such conversion has been made; and it is the duty of the assessor to cause such property to be assessed at its fair cash value.

From the Montgomery Circuit Court.

*P. S. Kennedy* and *S. C. Kennedy,* for appellant.

*A. B. Anderson,* Prosecuting Attorney, for appellee.

BLACK, J.—This cause was transferred from the Supreme Court to this court. See *Durham* v. *State, ex rel.,* 133 Ind. 422, S. C. 31 N. E. Rep. 787.

The court below overruled the appellant's demurrer to the appellee's complaint. The question as to the sufficiency of the third paragraph of the complaint is presented in the argument of counsel.

In that paragraph it was alleged, in substance, that the appellant was, at the commencement of this action, and for ten years then last past had been, a resident of Union Township, Montgomery County, Indiana, and during all that time had been a person of sound mind and over the age of twenty-one years; that on the 11th day of January, 1888, he had on deposit to his credit in the First National Bank of Crawfordsville, in said township, over one hundred thousand dollars in money, and on that day he entered into a contract with said bank whereby he agreed to keep on deposit to his credit in said bank, for the space of one year from that date, not less than one hundred thousand dollars, and, in consideration thereof, said bank agreed to pay him, for the use of said money, interest upon one hundred thousand dollars at the rate of four per cent. per annum, interest payable quarterly; that on the 31st day of March, 1888, he had on deposit to his credit in the bank, under said contract, $104,842.00, and this sum was all the money he had on deposit to his credit in the bank on that day; that for the fraudulent purpose of preventing a large portion of such property from being listed, and evading the payment of taxes thereon, he, on that day, drew his check on the bank against his said account for $24,025.00 and presented it to the cashier of the bank, and requested and received in payment therefor that sum in United States treasury notes not taxable, commonly called greenbacks; that upon receiving these notes the appellant enclosed them in a package and placed the same for safe keeping in the safe of said bank, where he kept the same until the 11th of April, 1888, when the cashier of said bank requested that they be restored to his credit in said bank under said

contract, and thereupon the appellant withdrew said package and redeposited said sum of treasury notes in the bank, and they were placed to his credit in the books thereof; that during all said time appellant was a stockholder and director of said bank, and actively engaged in the management and control of its affairs; that when he drew and presented said check, and requested and received in payment thereof United States treasury notes as aforesaid, the bank had on hand as a part of its reserve fund of the lawful money of the United States, required by the United States banking law to be at all times kept on hand by said bank, the sum of $40,000 in United States treasury notes, commonly called greenbacks; that this sum was all the United States treasury notes the bank then had on hand, and the treasury notes paid to the appellant on his said check were paid out of and were a part of said reserve fund, as the appellant then and there well knew; that he drew said check and received said treasury notes with the intention of only holding them for a few days, and until after the 1st day of April, 1888, and fully intending at the time he so drew and received them to return them to the bank within a short time; that he received from the bank under said contract and as provided therein four per cent. interest upon $100,000, which interest was paid by the bank in quarterly payments as follows: $1,000 March 31, 1888; $1,000 June 30, 1888; $1,000 September 30, 1888, and $1,000 December 31, 1888; that during the month of May, 1888, Daniel H. Gilkey, the assessor of said township, called on the appellant and furnished him the proper blanks upon which to list the taxable personal property owned by appellant on the 1st day of April, 1888, and afterward appellant made out and delivered to said assessor a list purporting to be a true list of all his taxable personal property, and appellant omitted from said list, and failed and refused to list for taxation, said sum of $24,025; that he temporarily con-

verted said sum of $24,025 into United States treasury notes, not taxable as aforesaid, for the fraudulent purpose of preventing such property from being listed, and of evading the payment of taxes thereon; wherefore, etc.

The statute relating to taxation (section 6330,R. S. 1881) provided that on the 1st of April each year, or as soon thereafter as practicable, and before the 1st of June, the assessor should call upon each person "required by this act to be assessed, and furnish him or her with the proper blanks for the purpose; and, thereupon, such person shall make to such assessor a full and correct description of all the personal property of which such person was the owner on the 1st day of April of the current year."

The statute plainly recognized the fact that United States treasury notes, commonly called greenbacks, are not taxable. See section 6331.

This was not an action to recover taxes, but it was an action to recover a penalty, and was based upon the provision of section 6339,R. S. 1881, that "if any person or corporation shall * * * temporarily convert any part of his personal property into property not taxable, for the fraudulent purpose of preventing such property from being listed, and of evading the payment of taxes thereon,— he or it shall be liable to a penalty of not less than fifty dollars nor more than five thousand dollars, to be recovered in any proper form of action, in the name of the State of Indiana, on the relation of the prosecuting attorney."

In the complaint, the appellee charges the doing of an act by the appellant in the language of the statute prescribing a penalty for such an act, and sets forth in detail all the circumstances of the act.

It is contended on behalf of the appellant that the facts stated do not show fraud, and that the statute can not be applied to such a transaction within this State, no taxable property being transferred to a place outside of the State,

it being claimed by counsel that the State can not be defrauded by such a transaction.

The penalty is not expressly limited to transactions whereby taxable property is removed from the State, or to exchanges whereby the ownership of taxable property is transferred to a non-resident. The terms of the statute are general.

When from the answer of the person listing his property to a prescribed interrogatory, and from evidence before the assessor, the latter is satisfied that the former, since the 1st of April of the preceding year, has temporarily converted any part of his personal property into property not taxable, for the purpose of preventing such property from being listed, and of evading the payment of taxes thereon, the assessor is required to cause such property to be assessed at its fair cash value. Section 6335, R. S. 1881.

The liability to taxation for such property is not determined by the apparent ownership on the 1st of April. It is to be taxed to the person who temporarily converted it for such purpose, if the assessor can discover that it has been so converted. It is immaterial, in such a case, whether the converted property has been transferred beyond the limits of the State or not. In either case, it is property which under the statute is liable to taxation. The evading the burden of taxation for which the penalty is prescribed is none the less a fraud upon the revenue because the transaction is between persons resident in this State, and does not result in the transfer of any property beyond the limits of the State.

We need not inquire, therefore, whether the transaction here in question is distinguishable from the case of a temporary transfer of tangible personal property for greenbacks.

Where for the purpose of escaping taxation on money on deposit in a bank, which the law required to be listed

for taxation March 1st of each year, the depositor, on the 28th of February, gave the bank a check payable to himself in legal tender treasury notes, and he received such notes and inclosed them in a sealed envelope, and immediately returned them thus sealed up to the bank, and three days afterward deposited the same money as a general and ordinary deposit in the bank, it was held that the motive being to defraud the government of its just dues, and to enable the depositor to escape the just burdens which society imposed on him, entered into and vitiated the whole transaction, and that a court of equity would not restrain the collection of taxes on the money so temporarily converted into non-taxable property. *Mitchell* v. *Commissioners, etc.*, 9 Kans. 344.

This decision of the State court was upheld by the Supreme Court of the United States in *Mitchell* v. *Commissioners, etc.*, 91 U. S. 206. Mr. Chief Justice Waite, delivering the opinion of the court, said : " A court of equity will not knowingly use its extraordinary powers to promote any such scheme as this plaintiff devised to escape his proportionate share of the burdens of taxation. His remedy, if he has any, is in a court of law."

J., the owner of a bank in Nebraska, by an order made on the 23d of February, caused United States bonds to be purchased for him on the last day of that month by a bank in New York, and they were retained in the possession of the latter bank until they were sold on the order of J. on the 7th of March of the same year, the 1st of March being the day of assessment. The evidence showed that the bonds were purchased by J., not with the design of making a permanent investment, but for the sole purpose of evading taxation. It was held that the purchase was a fraud upon the revenue law, and that J. was liable to taxation on the funds with which the bonds were purchased. *Jones* v. *Board, etc.*, 10 Neb. 154.

Where the capital of a banking company, used in its

daily business, was converted, a few days before the day of assessment, into United States securities, with the sole intention of evading taxation, and with the predetermined purpose of reconverting it as soon as practicable after the day of assessment, it was held that such investment was colorable and fraudulent, and that the capital was liable to taxation. *Holly Springs, etc., Co.* v. *Board, etc.*, 52 Miss. 281.

In the case last cited, the non-taxability of national securities being conceded, it was said that "there still remains power in the courts to investigate whether the holding is actual and *bona fide*, or colorable only, and fraudulent. If held in the latter aspect, and as a mere representation of property temporarily concealed, which is to be uncloaked as soon as the visit of the tax assessor shall have been made, the courts will look through the sham, and measure the rights of the parties by the real nature of the transaction.    *    *    *    In such case the tenure by which" the government securities "are held, being a fraud and a cheat, will be disregarded, and the bankers will be considered as still the owners of that property which, for the moment, they have attempted to hide beneath the protection of the general government."

In *Shotwell* v. *Moore*, 129 U. S. 590, where conduct similar to that of the appellant was involved, it was said: "It does not need the finding of the court below as a fact to show that this was an evasion, and a discreditable one, of the taxing laws of the State, if it could be successful." After referring to a number of cases, it was said: "All these decisions show that the courts look upon this transaction as indefensible, and consider it an improper evasion of the duty of the citizen to pay his share of the taxes necessary to support the government which is justly due on his property."

It seems to be sufficiently clear that the complaint sets forth a state of facts constituting a fraudulent attempt

against the collection of the public revenue, provided for by law, and shows conduct on the part of the appellant punishable by penalty as prescribed by the statute.

The judgment is affirmed.

Filed October 26, 1892; petition for a rehearing overruled December 30, 1892.