Spear, J.
From the finding of facts and the testimony shown by the hill of exceptions the following pertinent and controlling facts appear:
April 9, 1886, the defendant in error, Foster, was a resident of the village of Hudson, Summit county, Ohio, which village was in the township of Hudson, .and, has remained such resident all of the time since *440 that date. At that time his children were Jessie E. Foster, of full age, Horace Wood Foster, four years of age, and Marie Josephine Foster, about two years of age, all living with the father in the village of Hudson, and the last two named continued to so live until the commencement of the action below, save that Horace Wood was absent from home two to three years. Jessie E. was married in the year 1889 to Wm. B. Parmelee, and has resided with him in the township of Hudson, outside of the village, since 1891. On the date first named the plaintiff below, Foster, being the owner of certain notes and mortgages of the value of about thirty-one thousand dollars, executed an instrument of writing of which the following is a copy:
“Know all men by these presents that I, H. B. Foster, of Hudson, Summit county, Ohio, for the consideration of one dollar received to my full satisfaction of Mrs. E. S. Merrill of the city of Brooklyn, in the state of New York, and for the faithful execution by her of the trusts hereinafter fully expressed, do give, grant, bargain, sell, transfer, set over and assign to her, her heirs and assigns, in trust the several notes and mortgages enumerated and described in the schedule hereto attached marked ‘Schedule A, H. B. Foster’ and made a part hereof, and to have and to hold the above granted and transferred notes and mortgages unto the said Elizabeth S. Merrill, her heirs and assigns forever in the trust and confidence and not otherwise herein fully stated and set forth, to-wit:
“First: To regularly collect and when received to at once pay over the interest, income and profits thereof in equal shares to the following named persons, to-wit: Mrs. Caroline Wilcox, my sister, and *441 Jessie E. Foster, Horace Wood Foster and Marie Josephine Foster, my. three children, during the term of their several lives, except as otherwise herein provided.
“Second: At the death of either, leaving no issue surviving, or legal representatives of such issue, to pay over in like manner said income, interest and profits to the survivors or survivor of them.
“Third: At the death of either of them leaving issue or the legal representatives of issue, surviving, to pay over in like manner to such issue or their legal representatives such share of said income, rents, interest and profits as the deceased cestui que trust herein named would have been entitled to, had he or she not deceased.
“Fourth: To reassign to said H. B. Foster or his assigns, the several notes and mortgages herein described, upon demand made in writing made for that purpose at any time during the natural life of said H. B. Foster.
“Fifth. The said H. B. Foster reserves to himself and his assigns for and during the term of his natural life the right to control the distribution of the issues, income, rents and profits of all said notes and mortgages, and taken upon himself the payment of all costs and expenses involved in the collection thereof, and also reserves to himself the right to modify and change any and all the terms of this trust at any time during his natural life.
“Sixth: If this trust is not revoked or changed in the life of said H. B. Foster, then the said trustee, her successors, heirs and assigns are to distribute (only the issues, income, interest, rents and profits) but none of the principal of said trust fund, to any of the said cestui que trustent or their heirs until *442 such cestui que trust shall arrive at the age of thirty years, and then only so much of his or her share of said principal, as in the judgment of the said trustee, her successors, etc., the best interest of said cestui que trust may require.
‘‘ Seventh: That all funds shall be invested in the same manner and with the same securities required by law in case of the investment of moneys of minor wards in hands of guardians.
“Eighth: That the compensation allowed to said trustee, her heirs, successors and assigns, shall in no case exceed one per cent, per annum on the principal hereof, and there shall be no charge in the lifetime of said H. B. Foster.
“Witness my hand and seal this ninth day of April, A. D. 1886.
[Seal] “H. B. Foster.”
[Here follows a list of notes and mortgages aggregating in value $31,010.00.]
This was three days before “the day preceding the second Monday of April,” the date which, under section 2736, Revised Statutes, determines the return of property for taxation. The trustee named, Mrs. Merrill, was a lady sixty-five years of age, a sister of defendant in error’s first wife, and an aunt of the daughter, Jessie E. Mrs. Merrill was at the time a resident of the city of Brooklyn, New York, and so remained continuously until her decease in 1902. The securities named in the paper executed April 9, 1886, were immediately forwarded to Mrs. Merrill and remained in her possession for about three years. During that time no taxes were paid thereon. She did not receive any payment upon any note at any time. She simply held the notes until, by direction of Foster, she returned them to him, and *443 he has retained possession, at his office in the village, all of those notes and all renewal notes, ever since. Afterwards, in 1893, at the direction of Foster, she, in some way, appointed Parmalee (the son-in-law) her agent to look after the notes, but Parmelee does not remember that there was any paper between him and Mrs. Merrill. Parmelee did not have possession of the notes at any time, they remaining as before stated, continuously in the possession of Foster. While working for Foster, about his office in the village of Hudson, Parmelee figured and indorsed interest on some of the notes, turning all the amounts so received over to Foster. He kept no account of these payments, and for any work that he did with respect to the notes was paid by Foster. Parmelee listed the notes for taxation in the township outside of the village. He paid no taxes, however, but the taxes on the property so listed were always paid by Foster. Parmelee made no report of his transactions or collections in connection with the notes or mortgages to Mrs. Merrill. Mrs. Merrill did not personally indorse any of the notes or mortgages. Her name appearing upon any was placed there by Mrs. Parmelee by virtue of a power of attorney from Mrs. Merrill, prepared and sent to her by Foster, and all such indorsements were made at the request of Foster. He also ordered and directed the satisfaction- and cancellation of notes and mortgages from time to time, reloaned and reinvested, at his own instance, and without consultation with the alleged trustee, the sums so collected and mingled them with other securities. Small sums were from time to time advanced from said collections to the minor children for education, wearing apparel, etc., but he made no report of receipts or *444 expenditures to either Mrs. Merrill or Parmelee, nor did he credit up to the several beneficiaries or to either of them, their proportionate share of the money.
It was found by the circuit court that in 1893 or -4, Foster executed a writing to Parmelee, embracing the same terms and conditions as the one executed in 1886 to Mrs. Merrill, save that the amount was ten thousand dollars and the beneficiaries were the two-younger children only, but it should not escape attention that neither Foster nor Parmelee, when on the witness stand, could give any intelligent account of such a paper. These notes were listed for taxation by Parmelee in the township, but the taxes were paid by Foster out of money received on the notes, Parmelee made some collections on the notes and indorsed payments thereon, but at once turned over such money to Foster, who reloaned it and reinvested it, keeping the aggregate up to ten thousand dollars. Foster, in all respects, treated and dealt with the second fund substantially as he had with the larger fund. The alleged trusteeship of Parmelee continued until April 7,1900, when one Dittriek succeeded by virtue of a paper of that date. This date is significant. It was also just before “the day preceding the second Monday of April.” The property has been listed in the township, as before, and all taxes paid by Foster, as before. The rate of taxation in the village has been about double that in the township outside of the village.
Upon the facts so established relating to the notes and mortgages enumerated in the first “deed of trust,” the circuit court found, among the findings-of fact, that “all of the dealings of said Foster in connection with said notes and mortgages, as speci *445 fied in the foregoing findings, were done as agent of said Mrs. Merrill or said Parmelee,” and then followed as conclusion of law a judgment in favor of plaintiff below perpetually enjoining tbe Auditor from entering any of tbe property named in tbe petition for taxation, and awarding costs against bim.
In treating the question of Foster’s agency with respect to bis dealings with tbe securities as a question of fact we tbink tbe learned circuit court erred. Tbe facts being established, it became a question of law. This distinction, however, is not so important as is tbe question of tbe correctness of tbe conclusion. In either aspect we tbink tbe conclusion erroneous. Tbe reverse was tbe actual situation. To make this apparent it is only necessary to ascertain tbe real purpose of tbe transaction. That purpose on tbe part of Foster was plainly to retain absolute control of tbe property, and although, by an ingeniously framed paper, tbe control was apparently vested in another, or others, tbe real control, and during nearly tbe entire time, tbe actual manual possession, was in Foster, tbe object to be accomplished being to effect such an apparent change of ownership and control as would result in tbe avoidance of tbe payment of taxes in tbe village wholly, and for some three years in tbe township as well. This purpose, running all through tbe transaction from beginning to end, is so palpably apparent that it would seem like a waste of effort to take space to further discuss it. The true result as to agency is, we tbink, the exact reverse of that held by tbe circuit court. Instead of Foster being tbe agent of Mrs. Merrill or Parmelee, Foster was the principal and tbe others bis agents, indeed mere puppets in bis bands. With *446 this result as# to the situation of the parties, what, follows? Poster has come to a court of equity to seek its aid in carrying out a plausible and artfully devised scheme by which his property might escape its just burden of taxation in the taxing district where he lived, and where, for a portion of the time,, all of the persons named as cestui que trustent lived,, and the remainder of the time the most of them, the corpus of the property itself being all the time, save when out of the state, in Poster’s actual possession,, within that taxing district and protected by its laws. The listing in the township by Parmalee of the notes-assigned to Mrs. Merrill was entirely unauthorized upon any theory. Section 2735, Revised Statutes? Myers v. Seaberger, 45 Ohio St., 232. And, upon the finding of the circuit court as to Poster’s agency, it was clearly his duty, under the same section of the statutes, to list the property in the village of Hudson. Manifestly it is the duty of a court of equity to look through the disguises which parties seek to put on to escape their share of the public-burdens and act upon the real situation. It is hardly worth while to discuss the legal condition of the notes during their possession by Mrs. Merrill, for the action of Poster subsequently shows that, whatever was his original intention, he,, by his conduct, notwithstanding the attempt to observe some formalities, effectually revoked all authority conferred upon her, a right which the paper itself reserves to-him. Nobody seems to doubt that the real purpose-of Poster was to prevent this property being taxed in the village. The claim is that he had the right-to do this. It is not doubted that the owner of property may change its form, as from the stock of a foreign to that of a domestic corporation, or from per *447 sonal to real, to avoid taxation, or that he may, provided the transaction is not a mere shift, change from money which is taxable to United States securities which are not, or he may change his residence for the purpose of avoiding taxation. In any such case the motive does not concern anyone else, or the public. But we have no such case here. When a party seeks affirmative relief in equity his motives may always be inquired into for the purpose of determining whether his ease is entitled to favorable consideration. If we are correct in our diagnosis of defendant in error’s case it is entirely clear that his claim cannot be sustained. This conclusion would seem not to need the support of the authorities. But it has abundant support, both by opinions of text-writers and by decisions. Out of a great number we cite the following: 1 Cooley on Taxation, 770;
Holly Springs Savings & Ins. Co. v. Marshal County, 52 Miss., 281; Jones-v. Commissioners, 10 Neb., 154; Mitchell v. Commissioners, 9 Kan., 344; Albany City National Bank v. Maher, Rcr., 19 Blatch., 175; Mitchell v. Commissioners, 91 U. S., 206; Shotwell v. Moore, 45 Ohio St., 632; Shotwell v. Moore, 129 U. S., 590; Durham v. The State, 6 Ind. App., 23; Poppleton v. Yamhill County, 8 Ore., 337; Ransom v. Burlington, 111 Ia., 77.
The transactions respecting the attempted trust to Parmelee and Dittrick come within the same condemnation. Poster was all the time the man behind the scenes.
At the hearing in this court counsel for plaintiff in error disclaimed any desire to prevent credit being given for taxes actually paid. It seems but fair that such credit should be made, and it is the opinion of this court that it should be. The judgment of the *448 circuit court will be reversed, tbe injunction dissolved, and the petition below dismissed.

Reversed.

Davis, C. J.. Shauck, Price, Crew and Summers, JJ., concur.